**Marianne COCCHINI et al.**

v.

**CITY OF PROVIDENCE et al.**

**No. 81–595–Appeal.**

Supreme Court of Rhode Island.

July 19, 1984.

John A. Glasson, Donnelly & Glasson, Providence, for plaintiffs.

Herbert F. DeSimone, Jr., Asst. City Sol., Frank Mastrati, Jr., Asst. City Sol., for defendants.

## OPINION

KELLEHER, Justice.

The principal participants in this Superior Court litigation are the Acting Personnel Director of the City of Providence, John D. Mancone (Mancone),[1] and the four plaintiffs, Marianne Cocchini, Diane Fitzgerald, Marlene Weir, and Robert Rizzo.

On June 29, 1981, all four plaintiffs were serving in supervisory capacities in the city's Public Parks Department (parks department) when they were notified in writing by Mancone that they were being laid off as of the next day. The plaintiffs have maintained that their layoffs are illegal because the provisions of G.L.1956 (1980 Reenactment) § 45–2–18 have placed all employees of the parks department beyond the reach of the personnel director. Understandably, Mancone takes a contrary view.

Subsequently, a Superior Court justice, in granting plaintiffs' motion for a partial summary judgment, entered an order declaring the four layoffs illegal and unauthorized and directing Mancone to reinstate the quartet and pay them their back wages immediately. Mancone then appealed and sought a stay of the order. We stayed the payment of the back wages but refused to stay the remainder of the judgment. The sole issue on appeal is whether or not the trial justice erred in granting plaintiffs' motion.

■ The standard we use to review the grant or denial of such a motion is well established. If there exists no genuine issue as to any material fact and the moving party is entitled to judgment, the trial justice's grant of any such motion will be upheld. *Nichola v. John Hancock Mutual Life Insurance Co.*, R.I., 471 A.2d 945 (1984); *Estate of Bassett v. Stone*, R.I., 458 A.2d 1078 (1983); *Steinberg v. State*, R.I., 427 A.2d 338 (1981).

Despite Mancone's protestations to the contrary, this controversy presents a simple question of law.

In defending the layoffs, Mancone relies on various provisions of the 1940 version of Providence's City Charter, which was first effectuated by the enactment by the Legislature of P.L.1940, ch. 832, and modified through the years by various amendments that have emanated from the legislative chambers in the State House. However, we are of the opinion that the powers set forth in the charter do not enable Mancone to effect personnel changes within the parks department because, for the reasons that follow, not even Mancone's superior, the finance director, has this power.

State involvement with the day-to-day operations of Providence's governmental affairs reached a high point when the Legislature, at its January 1977 session, amended chapter 2 of title 45 of the General Laws with the enactment of P.L.1977, ch. 221. This amendment, which is now cited as § 45–2–18, by its pertinent terms accomplished the following: (1) created a municipal department of public parks, which was and is subject to the authority of the board of park commissioners; (2) made the newly created department responsible for the maintenance and upkeep of all public parks

---

1. Besides Mancone there are several other defendants, including the mayor, the city treasurer, the director of finance, the superintendent of parks, and the individual park commissioners. In the opinion we shall refer only to Mancone.

and municipal burial grounds, including such activities as planning, design, and construction; (3) designated the superintendent of parks an appointee of the commissioners and a department head endowed with all the powers and duties previously conferred by the charter on other similarly designated individuals; (4) declared that the superintendent would be assisted by such other employees as may be authorized under ordinances previously or hereafter enacted; (5) enjoined the transfer of any funds appropriated to the new department or the transfer of any park personnel to any other municipal program or project without the express written permission of the superintendent, subject to the approval of the commissioners of such a transfer; (6) resolved any conflict between the 1977 act and any municipal ordinance, resolution, rule, or regulation "other than the city charter" in favor of the new department; and (7) specifically declared that nothing contained in the amendment would be construed to reduce or diminish the power previously granted by the charter and ordinances to the commissioners.

Mancone places great emphasis on the "other than the city charter" verbiage that appears in the clause calling for the resolution of conflicts between the 1977 act and any city ordinance, resolution, rule, or regulation in favor of the parks department. Mancone claims that since the statute and the charter conflict, he should therefore prevail. If a conflict does exist, it is not irreconcilable, and that being so, we shall attempt to construe the two enactments in such a manner as to give full effect to each. *Federal Building & Development Corp. v. Jamestown*, 112 R.I. 478, 312 A.2d 586 (1973).

Mancone cites numerous charter provisions to support his claim that the charter gave him the authority to lay off plaintiffs. We have carefully reviewed these provisions and find they do not adequately support his claim.

Mancone first points to section 4.18 of the charter. This section gives the parks superintendent as a city department head (a fact conceded by Mancone) the right to "appoint, without the necessity of any approval or confirmation by any other person or body, such deputies as may now or hereafter be authorized by ordinance, resolution or law * * *." The section further provides that all such deputies serve at the pleasure of the department head.

Mancone claims that because the positions held by plaintiffs were not authorized by ordinance, he had the right to lay them off. We have reviewed the record and find this argument without merit. Section 4.18 merely addresses the question of the "appointment" of deputies; and the power of discharge, by the terms of section 4.18, lies with the department heads rather than with Mancone or those similarly situated. Furthermore, plaintiffs, in offering documentary support for their motion, furnished a certified copy of chapter 1981–12, No. 159, of the Providence City Ordinances, which became effective March 23, 1981. This ordinance included the specific positions within the parks department from which plaintiffs were subsequently laid off.

Mancone next refers us to sections 6.16(d) and (f). Section 6.16(d) permits the finance director to "examine into the need for all personnel employed by the city" and to "disapprove any payment to any person not employed in conformity with the budget or with any ordinance * * *," and section 6.16(f) empowers the finance director to "perform such other duties as may be necessary" to avoid deficits.

Mancone claims that he and other responsible city officials relied on these provisions and examined the need for city personnel in the light of the city's 1981 fiscal plight and then laid off employees in several departments. Mancone claims that plaintiffs just happened to fall within the unfortunate group of employees destined for layoff. However, a thorough reading of sections 6.16(d) and (f) reveals that they offer no support whatever for the layoff of plaintiffs.

As mentioned previously, the positions occupied by plaintiffs were authorized by ordinance, so plaintiffs were, contrary to Mancone's assertion, "employed in conformity with the budget or any ordinance." Section 6.16(d) does authorize the finance director to "examine into the need for all personnel employed by the city," but it does not indicate what steps he should take after completing his examination. Furthermore, later in the same subsection the finance director is directed, after examining a request for new or additional employees, to give a written recommendation to the council stating whether the request should be granted or denied, and why. In any event, even if we were to construe the section to mean that the finance director should recommend a layoff to the council after examining the need for all city employees, there is no evidence that any such recommendation was ever made.

Mancone next points to section 6.15(a), which directs the finance director to "exercise budget control over all city departments * * *." He claims that since the parks department is included in "all city departments," the finance director has the right to exercise control over its budget. We think that in light of the sentiments expressed in § 45–2–18, Mancone's myopic view as to the reach of section 6.15(a) is faulty.

 The finance director has control over the city budget as a whole, and over the individual budgets of most city departments, but not over the parks department budget. To hold otherwise would, in our opinion, render § 45–2–18 a nullity. We are mindful that the last paragraph of § 45–2–18 implies that the charter shall supersede the statute in the event of a conflict. We are also aware that a primary rule of statutory construction is that words used in a statute should be given their ordinary literal meaning. However, we have also said that a literal reading of the statute may be ignored if it does not convey a sensible meaning or when doing so would defeat an evident legislative pur-

pose. *Kingsley v. Miller*, 120 R.I. 372, 388 A.2d 357 (1978). In addition, this court will not ascribe to the Legislature an intent to enact legislation that is devoid of any purpose, is inefficacious, or is nugatory. *Kingsley v. Miller, supra; Town of Scituate v. O'Rourke*, 103 R.I. 499, 239 A.2d 176 (1968). To interpret § 45–2–18 literally would be to give with one hand and take back with the other, and this we refuse to do.

Mancone now goes on to cite other provisions of the charter that he claims, when taken together, bestow upon him and other city officials the power to lay off plaintiffs. Section 6.3 enumerates the general powers and duties of the finance director. One of these powers is to "have charge of the administration of the financial affairs of the city * * *." Section 6.34(a) directs the personnel director to "represent the public interest in the improvement of personnel in the city service" and subsection (c) directs him to "prepare rules * * * to promote the efficiency and good of the city service * *."

We find these legislative declarations to be so general in nature that they are of no assistance to any of the litigants. In any event, they retain their viability notwithstanding our conclusion that Mancone did not have the right to lay off plaintiffs.

Finally, Mancone directs our attention to section 6.37 as a basis for his actions. That section provides that "[a]ll appointments, promotions and changes in status of personnel * * * shall be made in accordance with law and ordinance and with the approval of the director of personnel." At this point it should be pointed out that Providence's 1940 charter is a legislative charter which in 1977 made the city, since it had no right of self-government, subject to the direction and control of the state Legislature. *Marro v. Cranston General Treasurer*, 108 R.I. 192, 195, 273 A.2d 660, 662 (1971); *City of Central Falls v. Halloran*, 94 R.I. 189, 194, 179 A.2d 570, 572

(1962).[2] Having in mind our previously declared unwillingness to ascribe to the General Assembly an intent to give with one hand and take away with the other, we would simply say that once § 45–2–18 became the law, the personnel director's ability to approve personnel appointments and changes within the parks department became somewhat inoperative.

■ We believe, as did the trial justice, that on this record it is possible to reconcile the 1977 statute with the 1940 charter and, in line with the sentiments expressed earlier in this opinion, to hold that the council may appropriate any amount of money it wishes for the operation of the parks department, but once the money has been appropriated to the parks department, the expenditure of that sum lies within the discretion of the superintendent, subject to the approval of the commissioners.

The sentiments expressed herein are not intended to discourage Mancone's or the finance director's efforts to avoid deficits. They are free to recommend to the council that as little as one dollar be allocated to the parks department. The trial justice's ruling simply prevents Mancone or anyone else outside the parks department from exercising a line-item veto power over the department personnel roster.

■ It is our opinion that the trial justice's ruling that the plaintiffs' layoffs were illegal and unauthorized and that their reinstatement with back pay be ordered was correct.

The defendants' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

**2.** At the general election of November 4, 1980, the electors of the city of Providence, in seeking to escape some of the strictures imposed by the historical relationship between the state and its municipalities [*see Opinion to the House of Representatives,* 79 R.I. 277, 87 A.2d 693 (1952)], approved the adoption of a Home Rule Charter by the city pursuant to the provisions of Article XXVIII of Amendments to the Rhode Island Constitution. This approval, so far as it was necessary, was ratified and confirmed by the General Assembly at its January 1981 session. Public Laws 1981, ch. 37. The charter is now referred to as the Providence Home Rule Charter of 1980. *Bucci v. Fargnoli,* R.I., 437 A.2d 1384, 1385 (1981).