Catherine MULLINS et al.

v.

Nancy BORDELEAU.

84–218–Appeal.

Supreme Court of Rhode Island.

Nov. 17, 1986.

Barry H. Best, R.I. Legal Services, Providence, for plaintiffs.

Arlene Violet, Atty. Gen., Timothy Mullaney, David D. Prior, Sp. Asst. Attys.

Gen., Sheila Tobie Swan, Asst. Atty. Gen., for defendant.

## OPINION

KELLEHER, Justice.

In this Superior Court class action for a preliminary injunction and a decision on the merits, the trial justice found the General Public Assistance (GPA) "lump sum" rule as set forth in the Department of Human Services (DHS)[1] Manual § 605(III)(H) to be in direct contravention of G.L.1956 (1984 Reenactment) § 40–6–9 and declared it null and void. The trial justice further permanently enjoined Joseph Murray, then the acting director of DHS, from applying the rule.[2] The DHS now appeals.

The facts in this case are not in dispute. In November of 1981 John J. Affleck, then the director of DHS, promulgated the lump sum rule at issue.[3] The rule provides that a GPA recipient receiving any lump sum, such as an insurance award or an inheritance, shall become ineligible for GPA benefits for a fixed period. The length of time in which benefits are denied is determined by calculating what the recipient would have received on a weekly basis had the recipient not received the lump sum. The DHS then assumes that the would-be recipient will expend the lump sum at a rate equivalent to the rate at which the weekly benefits normally would have been exhausted. A recipient, for example, normally entitled to $50 per week, would be ineligible for benefits for ten weeks if the recipient acquired a lump sum of $500.

Catherine Mullins, the named plaintiff, suffered from mental retardation, chronic anxiety, and depression. She received GPA benefits totalling $50.27 per week,

based upon her financial need and her inability to sustain full-time employment. In July of 1982 her son died, and she was awarded death benefits under an insurance policy of $13,064.32. She notified DHS of her award, whereupon DHS informed her that she was no longer eligible for benefits owing to her receipt of the lump sum insurance-policy award.

The plaintiff then for some ten months engaged in various occupations including jewelry work and house cleaning. During this time she exhausted nearly all of the insurance award on funeral and other expenses and in April of 1983 plaintiff reapplied for GPA. In a document dated April 27, 1983, DHS rejected plaintiff's application for benefits because of her receipt in July 1982 of the lump sum insurance award.

Applying the formula in Rule 605(III)(H), plaintiff was ineligible to receive benefits until March of 1987. Again, her period of ineligibility was determined by dividing her $13,064.32 insurance award by the amount of the weekly GPA payment ($50.27) she normally would have received. Her period of ineligibility therefore totaled nearly five years.

Allen Gioielli, who intervened in this action, was also denied benefits upon application of the lump sum rule. Gioielli suffered from a temporary disability owing to a back injury. He received GPA benefits totaling $30.95 per week. In April of 1983 he received a $1,000 back-pay award relating to some previous employment. He notified DHS of the award and was found ineligible for GPA benefits until November of 1983 upon application of the lump sum rule.

---

1. When this action originally commenced, the named defendant was the Department of Social and Rehabilitative Services. The name was subsequently changed to the Department of Human Services pursuant to G.L.1956 (1984 Reenactment) § 40–1–4.1, as amended by P.L 1985, ch. 181, art. 35, § 1.

2. Rule 25 of the Superior Court Rules of Civil Procedure provides that a successor to a public

officer be substituted as a party and that proceedings following the substitution shall be in the name of the substituted party when the original named public official is replaced. Nancy Bordeleau replaced Acting Director Joseph Murray after this case was filed.

3. The rule is set forth in its entirety in the appendix immediately following this opinion.

In August of 1983 Gioielli reapplied for benefits. His application was again rejected based on the DHS lump sum rule. His ineligibility again was determined by dividing his $1,000 back-pay award by the amount of the weekly GPA payment ($30.95) he normally would have received. His period of ineligibility therefore totaled some thirty weeks.

On May 20, 1983, Ms. Mullins filed suit on behalf of herself and all others similarly situated, that is, all others who had or were to have their GPA benefits terminated by application of the lump sum rule. She challenged the validity of the lump sum rule, maintaining that the rule was inconsistent with § 40–6–9 and further claiming that defendant lacked the statutory authorization to promulgate the rule. She asked for declaratory relief and for an injunction enjoining DHS from applying the lump sum rule to deny GPA benefits. The parties subsequently stipulated to the certification of a class, consisting of all persons "who have had or will have their GPA benefits terminated because of the receipt by such persons, or by members of their families, of 'lump-sum' income, under the policies set out in [the lump-sum rule]."

On February 13, 1984, the trial justice entered his decision. He concluded that the lump sum rule was in direct contravention of the statutory mandate of § 40–6–9, that only "available" income be considered when determining eligibility for GPA benefits. Second, he found that the lump sum rule was promulgated by the director of DHS outside the boundaries of his authority and was therefore null and void. He permanently enjoined enforcement of the rule and ordered DHS to identify each current and former applicant for and recipient of GPA benefits who had benefits denied or terminated upon application of the rule and provide those persons with the benefits denied.

The DHS contends that the trial justice erred in failing to recognize that Rhode Island law expressly grants DHS the power to promulgate the lump sum rule. In particular, DHS submits that two sections of the Rhode Island public assistance law, §§ 40–6–5 and 40–6–8, expressly delegate such authority to DHS.

Section 40–6–5 provides that ownership of real or personal property shall not disqualify a person from receiving assistance so long as the value of the property or the income therefrom is within the *"limitations of standards established by regulations of the [DHS]."* (Emphasis added.) Section 40–6–8 provides that assistance may be "provided either in the form of work relief or home relief and may include such medical care and supplies, hospitalization, and funeral expenses as *the department by regulation determines."* (Emphasis added.)

We agree with DHS that the sections cited plainly grant rule-making authority to DHS. We fail, however, to see language within either § 40–6–5 or § 40–6–8 constituting an express grant of power to create the lump sum rule before us, nor do we believe that such a grant can be implied upon a reading of the entire body of Rhode Island public-assistance law. As this court has emphasized in the past, "[a]s creations of the Legislature, administrative agencies must have specific statutory authority for the regulations they promulgate." *Berkshire Cablevision of Rhode Island, Inc. v. Burke,* 488 A.2d 676, 679 (R.I.1985); *see also Little v. Conflict of Interest Commission,* 121 R.I. 232, 236, 397 A.2d 884, 886 (1979).

Section 40–6–5 plainly grants rule-making power with respect to the valuation of property, just as § 40–6–8 grants such power with respect to determining the manner in which relief is provided as well as whether it may include the covering of certain types of medical and emergency expenses. The power to promulgate a lump sum rule, however, does not extend from either of these grants of rule-making power. A lump sum rule, such as Rule 605 (III) (H), when applied, has the effect of barring an otherwise eligible recipient for a rigidly fixed period of time without regard

to the individual's needs and circumstances. Nowhere in § 40–6–5 or in § 40–6–8 do we find "specific statutory authority" for this regulation, *Berkshire Cablevision*, 488 A.2d at 679, nor do we find it in any other clause within the body of Rhode Island public-assistance law.

The DHS maintains that its rule-making power alternatively derives from the fundamental power of any agency to promulgate regulations and, additionally, that the trial justice failed to give the proper weight to the agency's interpretation of the statute. In recognizing the power of governmental agencies to create rules and regulations, we have been careful, in the past, to differentiate the power of an agency to promulgate interpretive rules from its power to promulgate legislative rules. The difference is crucial because a legislative rule, when properly promulgated, is binding on a court as a valid statute; whereas an interpretive rule is one without the force of law, the reviewing court being free to substitute its judgment for that of the agency in deciding whether to enforce the interpretive rule. *Lerner v. Gill,* 463 A.2d 1352, 1358 (R.I.1983).

In *Lerner* we set forth the rule to be applied when determining whether a rule was to be categorized as legislative or interpretive:

> "To determine whether a rule is to be classified as legislative or interpretive, one must consider the power assigned to the administrative agency. If a statute expressly delegates power to interpret and define certain legislation to an agency, regulations promulgated pursuant to that power are legislative rules having the force of law. *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). If the lawmaking branch has not conferred such authority upon the agency promulgating the rule, the promulgation is interpretive and is not to be considered controlling by the courts. *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Skidmore v. Swift & Co.,* 323 U.S. 134,

65 S.Ct. 161, 89 L.Ed. 124 (1944)." 463 A.2d at 1358.

Applying the rule of *Lerner* to the case before us, it is plain that the lump sum Rule 605(III)(H) as promulgated by DHS constitutes an interpretative rather than a legislative rule. The statutes evince no express delegation of power to promulgate a lump sum rule. As such, under *Lerner,* the reviewing court is free to substitute its judgment for that of the agency in deciding whether to enforce the rule.

We therefore turn our inquiry toward the question of whether the lump sum rule of DHS is one consistent with the spirit of the public-assistance law of Rhode Island.

Section 40–6–9 of the Rhode Island public-assistance law requires that "[t]he amount of assistance which any recipient shall receive * * * be determined with due regard to the income and resources *available* to him from whatever source." (Emphasis added.) The trial justice cited § 40–6–9, but offered little explanation for his finding that the requirement that income and resources be "available" to the recipient when calculating benefits rendered the lump sum rule null and void. While we agree with the conclusion of the trial justice, we believe some elaboration is in order.

Our paramount task in construing a statute is to ascertain the intent behind its enactment and to effectuate that intent whenever it is lawful and within the competence of the General Assembly. *Trifari v. Employees' Retirement System of the City of Providence,* 485 A.2d 100, 101–02 (R.I.1984); *Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co.,* 466 A.2d 1153, 1156 (R.I.1983). In ascertaining that intent, we look to the rules of statutory construction to aid in our task and examine the language, nature, and object of the statute. *Lake v. State,* 507 A.2d 1349, 1351 (R.I.1986); *Howard Union of Teachers v. State,* 478 A.2d 563, 565 (R.I.1984).

Section 40–6–9 requires that DHS consider income and resources "available" when determining the amount of assistance due a potential recipient. Unless some unique meaning was obviously attributed to the words of a statute by the General Assembly, the words are to be given their plain and ordinary meaning. *City of Warwick v. Aptt*, 497 A.2d 721, 724 (R.I.1985); *Cocchini v. City of Providence*, 479 A.2d 108, 111 (R.I.1984).

"Available" is defined as "such as may be availed of: capable of use for the accomplishment of a purpose: immediately utilizable." Webster's Third New International Dictionary 150 (1961). Black's similarly defines "available" as "[s]uitable; useable; accessible; obtainable; present or ready for immediate use." Black's Law Dictionary 123 (5th ed. 1979). We see no reason to define "available" as employed by the General Assembly in § 40–6–9 any differently. The income and resources that DHS may consider in calculating assistance levels must be usable, accessible, at hand. The income and resources considered by the lump sum rule are, in effect, theoretical, or assumed, and not "present or ready for immediate use."

The DHS maintains that its interpretation of the word available as utilized in § 40–6–9 is reasonable in light of the present-day effort on the part of government to dispense a limited number of funds to as many needy persons as possible. But in the case before us the application of the lump sum rule resulted in the denial of benefits to a woman who had a history of emotional and physical problems and was found incapable of sustaining employment, even after the woman was able to prove that all of the money received from the insurance carrier had been spent. The DHS maintains that such a rule is necessary to prevent potential recipients of assistance from wasting resources, but the facts in this case indicate that Ms. Mullins spent nearly all of the lump sum on funeral and other expenses, such as heat, electricity, telephone and rent, hardly a waste of resources.

We remain ever mindful of our rule of statutory construction, dictating that we construe plain words of a statute so as not to give the statute an absurd result or defeat its obvious purpose, *City of Warwick v. Aptt*, 497 A.2d at 724; *Craig v. Pare*, 497 A.2d 316, 319 (R.I.1985) and that we refuse to adopt a construction that would defeat the evident purpose of a statute. *State v. Gonsalves*, 476 A.2d 108, 111 (R.I.1984). It would be fatuous indeed to countenance a construction of § 40–6–9 that would allow DHS to summarily deny benefits to otherwise qualified applicants, particularly in light of § 40–6–2, which mandates that public assistance be made available to "any person in Rhode Island who is in need."

The DHS further contends that the promulgation of the lump sum rule is consistent with the passage, by Congress, of the Omnibus Budget Reconciliation Act of 1981, 42 U.S.C.A. § 602(a)(17) (West 1983), which statutorily created a lump sum rule that was to be applied to persons receiving Aid to Families with Dependent Children. They maintain that the federal rule was promulgated to save millions of dollars per year in a period of decreasing revenue and that the same considerations applied to the creation of the Rhode Island lump sum rule.

We fail to see how the promulgation, by Congress, of the federal lump sum rule authorizes the creation of a similar rule by DHS to be applied to recipients of state benefits. The federal rule was expressly authorized by the federal statute. The DHS lump sum rule not only lacks express statutory authorization, but also directly contravenes § 40–6–9, mandating that only the "available" income and resources of the potential recipient be considered when calculating eligibility.

For the reasons stated above, the appeal of DHS is denied and dismissed and the judgment appealed from is affirmed.

APPENDIX

GPA Income

Sec. 605

H. *Treatment of Lump Sum Payments*

Lump sum payments must be treated as income and applied to the assistance plan.

Receipt of a lump sum payment may render the family/individual/couple ineligible. When a lump sum payment is received from any non-excludable source by a member of the assistance plan (including a natural or adoptive parent who might not be in the plan; i.e., a parent who has voluntarily quit a job without good cause), the money, together with any unearned income and/or net earned income (after application of appropriate disregards), is treated as income in the determination of eligibility and the amount of the assistance payment.

Non-excludable sources include, but are not limited to, inheritance, lump sum payments from RSDI, VA, TDI, UCE or other benefit, monies received as a result of the sale of real or personal property or other assets, and income from insurance adjustments or settlements.

If the lump sum income, combined with (1) any unearned income regularly received and/or (2) any earned income remaining after allowable disregards are applied, exceeds the appropriate weekly standard of need for the family/individual/couple, the family/individual/couple is ineligible for assistance.

In addition, the member of *full* weeks of ineligibility must be determined. This is calculated by dividing the total income by the appropriate standard of need, starting in the week in which the income is received (not the week of discovery of the income). Any income remaining after this calculation is treated as income received in the first week following the period of ineligibility.

EXAMPLE: A family of four (4) receives an inheritance of $220 on April 15th, has unearned income of $30 and net earned income of $50 after the application of allowable disregards. The non-winter standard of need for the family

size of four (4) is $96.94 ($97, rounded). The period of ineligibility is determined as follows:

$220 - lump sum
  30 - unearned income
  50 - net earned income
$300 - (total income) ÷ $97 = three weeks of ineligibility.

Since the combined amount of income is $300 and the weekly standard of need is $97 (rounded), the family is ineligible for three (3) full weeks (beginning with the week of receipt of the lump sum). Since $97 × 3 = $291, there is a remainder of $9 which must be treated as if it is income received in the first week following the period of ineligibility and is considered available for use at that time.

There may be instances when both the winter standard and the non-winter standard must be applied:

EXAMPLE: A family of four (4) receives an inheritance of $220 during the last week of winter standard, has unearned income of $30 and net earned income of $50 after the application of allowable disregards. The winter standard of need for the family size of four (4) is $121.96 ($122, rounded) and the non-winter standard of need for the family size of four (4) is $96.94 ($97, rounded). The period of ineligibility is determined as follows:

$220 - lump sum
  30 - unearned income
  50 - earned income
$300 - total income
−122 - winter standard (rounded) for March
$178 - (balance of income) ÷ $97 = one additional week of ineligibility, for a total of two weeks of ineligibility.

The family is ineligible for two (2) full weeks. The remainder of $81 is treated as if it is income received in the first week following the period of ineligibility and is considered available for use at that time.

If a GPA payment has been made for a week in which the family is ineligible, the overpayment must be recouped.

In all situations where a case is discontinued due to the lump sum provision, an AP–56 must be mailed at least ten (10) days prior to the effective date of closing. Determination for possible eligibility for Medical Only is made. The recipient must be advised of the period of ineligibility and the consideration of the balance of the income if application for assistance is made in the week following the period of ineligibility.

Subsequent changes in the family unit's composition or other circumstances do not alter the application of a lump sum payment computation or the period of ineligibility. If a recipient moves from one state to another during a period of ineligibility due to a lump sum payment, the period of ineligibility remains in effect.

Rev. 11/81