DECISION
The Auto Body Association of Rhode Island ("ABARI") seeks review of a final Decision ("Decision") by the Rhode Island Department of Business Regulation ("DBR" or "agency"). In that Decision, DBR, acting through its director, A. Michael Marques ("Marques"), denied ABARI's declaratory request that the prevailing rate for labor is to be determined solely by the provisions of G.L. 1956 § 27-29-4.4. The Rhode Island Administrative Procedures Act ("RIAPA"), G.L. 1956 § 42-35-15, confers jurisdiction on this Court.
 I Facts and Travel
ABARI describes itself as a membership organization comprised of approximately 100 independent auto body repair facilities throughout Rhode Island. (Mem. of Law on Behalf of Appellant, Auto Body Association of Rhode Island [hereinafter ABARI Mem. of Law] at 2.) ABARI argues that § 27-29-4.4 "requires auto *Page 2 
insurers to determine and set a prevailing labor rate based upon the results of . . . [the] labor rate survey [mandated by the statute], and to pay such rate established to fully licensed auto body repair facilities in Rhode Island." Id. at 1. On July 23, 2007, ABARI formally requested a declaratory ruling from DBR urging the agency to "declare that the survey results be used to determine a prevailing labor rate as required by the statute, which does not allow any other mechanism to determine and set such rate." (Pet. for Declaratory Ruling at 4.) In a supplemental filing with DBR, ABARI further argued that § 27-29-4.4 "is an unambiguous statute and as such does not require statutory construction." (Supplemental Mem. to Req. for Declaratory Ruling at 1.)
On November 11, 2007, DBR denied ABARI's request. In the Decision issued by Marques, the agency determined that several provisions of § 27-29-4.4 are ambiguous and thus it is proper for the agency to interpret the statute in accordance with the legislature's intent. (Decision at 4, 5.) In particular, DBR determined that the phrase "motor vehicle liability insurance" found in § 27-29-4.4(a) is ambiguous because "in Rhode Island there is no line of insurance called `motor vehicle liability insurance.'" (Decision at 4.) DBR also determined that the word "survey" is ambiguous because "the statute utilize[s] the word `survey' in more than one context" — specifically, to refer to a written document and to the information gathered via that document.Id. at 5. Consequently, DBR interpreted the statute as indicating that the labor rate survey mandated by § 27-29-4.4(a) is not the sole determinant of the prevailing labor rate; rather, it is only one factor which insurers are to consider in determining such a rate. (Decision at 7.) *Page 3 
ABARI timely appealed DBR's Decision to the Superior Court. The Property Casualty Insurers Association of America (PCIAA) was granted leave to intervene. PCIAA requests that the Court affirm DBR's Decision.[1]
(Mem. of Law on Behalf of Intervenor, the Property Casualty Insurers Association of America [hereinafter PCIAA Mem. of Law] at 10.)
 II Standard of Review
The RIAPA explicitly states the standard that governs this Court's review of a determination by an administrative agency, including DBR.See §§ 42-35-15, 42-35-18. Section 42-35-15(g) provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Page 4 
The appellate review authority granted this Court by § 42-35-15 "is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Barrington Sch. Comm. v. Rhode Island State Labor RelationsBd., 608 A.2d 1126, 1138 (R.I. 1992). "This limitation obtains even in situations in which the court might be inclined to view the evidence differently and draw inferences different from those of the agency under review." Rhode Island Pub. Telecomm. Auth. v. Rhode Island State LaborRelations Bd., 650 A.2d 479, 485 (R.I. 1994).
However, the Court is not bound by decisions of law reached by an administrative agency, such as DBR. See Chenot v. Bordeleau,561 A.2d 891, 893 (R.I. 1989) (citing Carmody v. Rhode Island Conflict ofInterest Comm'n, 509 A.2d 453, 458 (R.I. 1986)). The Court may reverse, modify, or remand an agency's decision if the decision substantially prejudices the appellant by satisfying any of the six criteria explicitly stated in § 42-35-15(g). See Barrington Sch. Comm.,608 A.2d at 1138. The Court, in its limited review, explores the record to identify and correct any potential violations of the applicant's constitutional or statutory rights. See id. It is the Court's duty "to determine what the law is and its applicability to the facts."Chenot, 561 A.2d at 893. Without question, the construction of a particular statute is a question of law. City of East Providence v. Pub.Utilities Comm'n, 566 A.2d 1305, 1307 (R.I. 1989); see also R.R. Ret.Bd. v. Bates, 126 F.2d 642, 643 (D.C. Cir. 1942) (explaining that whether the appellee came within the scope of the relevant statute "is a question of law, one of statutory interpretation, and that is a field in which courts are regarded as having some expertness"). Therefore, this matter is properly before this Court for de novo review. *Page 5 Marques v. Pawtucket Mut. Ins. Co., 915 A.2d 745, 747 (R.I. 2007) (citing Silva v. Fitzpatrick, 913 A.2d 1060, 1063 (R.I. 2007)).
 III Law and Analysis A Statutory Interpretation
Section 27-29-4.4, titled "Auto body repair rate surveys," was enacted by the Legislature in 2006. P.L. 2006 ch. 173, § 1. The statute provides in part as follows: "Every insurance carrier authorized to sell motor vehicle liability insurance in the state shall conduct an auto body repair labor rate survey. . . ." Section 27-29-4.4(a). The statute defines "auto body repair labor rate survey" as "an analysis of information gathered from auto body repair shops regarding the rates of labor that repair shops charge in a certain geographic area." Section 27-29-4.4(a)(1). The statute also requires that "[e]ach insurer must conduct an auto body labor rate survey, in writing, annually to determine a prevailing auto body labor rate for fully licensed auto body repair facilities." Section 27-29-4.4(a)(2). The statute indicates four items that must be included in each auto body labor rate survey — the name and address of the shops surveyed; the total number of shops surveyed; the prevailing rate established by the insurer; and a description of the formula or method used to calculate the prevailing rate. Section 27-29-4.4(a)(4).
ABARI asserts that § 27-29-4.4 "is not ambiguous and that deference to the Department's determination should not be accorded as its interpretation of the statute runs contrary to the express language used by the Legislature." (ABARI Mem. of Law *Page 6 
5.) For their part, DBR and PCIAA maintain that the statute is ambiguous and that DBR's interpretation effectuates the Legislature's intent. (Decision at 4, 7; PCIAA Mem. of Law 6-9.) Moreover, DBR and PCIAA urge that DBR, as the administrative agency charged with effectuating § 27-29-4.4, is owed great deference in interpreting the statute. (Br. of the Department of Business Regulation 3; PCIAA Mem. of Law 5.)
This Court recognizes that, under certain circumstances, an administrative agency is owed "great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency."In Re Lallo, 768 A.2d 921, 926 (R.I. 2001). As the Rhode Island Supreme Court has repeatedly explained, an administrative agency is owed great deference in interpreting a statute "where the provisions of a statute are unclear or subject to more than one reasonable interpretation . . . as long as that construction is not clearly erroneous or unauthorized."Gallison v. Bristol Sch. Comm., 493 A.2d 164, 166 (R.I. 1985) (citingFlather v. Norberg, 119 R.I. 276, 377 A.2d 225, 229 n. 3 (R.I. 1977));see Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 344-45 (R.I. 2004) (explaining that when an administrative agency interprets a statute whose text is unclear or subject to more than one interpretation and that agency is empowered by the Legislature to enforce that statute, a reviewing court must afford the agency's interpretation "weight and deference as long as that construction is not clearly erroneous or unauthorized").
However, when the text of a particular statute is not ambiguous the Court must interpret the statute literally. Labor Ready Northeast,Inc., 849 A.2d at 345 (citing Stebbins v. Wells, 818 A.2d 711, 715 (R.I. 2003)). The Court is mindful that "a primary rule of statutory construction is that words used in a statute should be given their ordinary *Page 7 
literal meaning. . . ." Cocchini v. City of Providence, 479 A.2d 108,111 (R.I. 1984). "It is a well-settled principle of statutory construction in this jurisdiction that when a statute has a plain, clear, unambiguous meaning, no interpretation of the statute is required and the court is bound to construe the statute in accordance with the plain and ordinary meaning set forth therein." Krupa v. Murray,557 A.2d 868, 869 (R.I. 1989); see also Roadway Express, Inc. v. Rhode IslandComm'n for Human Rights, 416 A.2d 673, 674 (R.I. 1980) ("Words used in a statute are accorded their plain and ordinary meaning unless a contrary intent appears on the face of that statute."). Furthermore, "this Court will not ascribe to the Legislature an intent to enact legislation that is devoid of any purpose, is inefficacious, or is nugatory."Cocchini, 479 A.2d at 111.
 B Specific Provisions Claimed to be Ambiguous
In its Decision, DBR expressly states that § 27-29-4.4 is ambiguous. (Decision at 4.) Specifically, the agency identifies three words or phrases used in the statute that require "[a] great deal of statutory construction . . . to properly implement the statute. . . ."Id.
 1 Every Insurer
First, in its Decision the agency stated that "hundreds of insurers are `licensed' in Rhode Island but do not actually write any insurance, therefore, do not pay any automobile damage claims" and the Legislature could not have intended the statute to apply to all insurers in spite of the statute's use of the phrase "every insurance carrier." Section 27-29-4.4(a); Decision at 4-5. In interpreting this phrase as used in § 27-29-4.4(a) *Page 8 
DBR determined that the Legislature intended the motor vehicle liability insurance provision to apply "to all insurers writing more than 1% of the Rhode Island market in private passenger automobile lines." (Decision at 5.)
Applying the cardinal rule of statutory construction that words in a statute must be given their ordinary literal meaning, the Court can contemplate no ambiguity in the word "every." The Oxford English Dictionary defines "every" as an adjective "[u]sed to express distributively the sense that is expressed collectively byall." 1 The Compact Edition of the Oxford English Dictionary 908 (28th prtg. 1989). Similarly, Webster's Dictionary defines "every" as "all, as of the items or individuals constituting an aggregate, considered separately; each, taken as part of an aggregate." Webster's NewUniversal Unabridged Dictionary 633 (2nd ed. 1983). DBR's claim that the reference in § 27-29-4.4(a) to "every insurance carrier" does not mean that the statute applies to all insurance carriers authorized to provide insurance in Rhode Island cannot stand in the face of the ordinary literal meaning of the word "every." Cocchini, 479 A.2d at 111.
 2 Motor Vehicle Liability Insurance
Second, DBR claims that the statute's use of the phrase "motor vehicle liability insurance" in § 27-29-4.4(a) is unclear because "in Rhode Island there is no line of insurance called `motor vehicle liability insurance.'" (Decision at 4.) The Court disagrees. The words "motor vehicle liability insurance" as used in the statute, taken individually and collectively, have a readily identifiable plain and ordinary meaning in Rhode Island. The extensive statutory scheme governing motor vehicles in this state defines "motor vehicle" as "every vehicle which is self-propelled or propelled by electric *Page 9 
power obtained from overhead trolley wires, but not operated upon rails, except vehicles moved exclusively by human power, an EPAMD [electric personal assistive mobility device] and electric motorized bicycles . . ., and motorized wheelchairs." G.L. 1956 § 31-1-3(o).
Similarly, the phrase "motor vehicle liability insurance" is readily defined by statute. Our state's liability insurance scheme defines "motor vehicle liability policy" as "an `owner's policy' or an `operator's policy' of liability insurance, certified as provided in § 31-32-21 or § 31-32-22 as proof of financial responsibility for the future, and issued . . . by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named in it as insured." Section § 31-32-24(a). In addition, §§ 31-32-21
and 22 provide processes for residents and non-residents, respectively, to show proof of motor vehicle liability insurance by filing a certificate issued by an authorized insurance carrier with the Rhode Island Division of Motor Vehicles. Though these statutory provisions are not intended solely or even principally to direct the regulatory actions of DBR, these provisions nonetheless apply to DBR in its capacity as the state's regulator of motor vehicle insurance. In effectuating its statutory mandate under § 27-29-4.4, DBR is impliedly charged with observing the statutory definitions and processes which impact its operations. See In re Advisory Opinion to the Governor (EthicsCommission), 612 A.2d 1, 8-9 (R.I. 1992) (considering "this state's historical treatment and understanding of the term ["adopt"] in constitutional and statutory provisions wholly unrelated to the constitutional provision in question in this matter, the Ethics Clause of Art. 3, Sec. 8). Consequently, DBR's contention that the phrase "motor vehicle liability insurance" is ambiguous is not persuasive. *Page 10 
 3 Survey
Third, in its Decision DBR determined that the word "survey" is used ambiguously throughout § 27-29-4.4. According to DBR,
 "Section (a)(2) and (3) use the word `survey' to refer to the document sent to auto body shops, yet Section (6)(i) refers to the same document as a `questionnaire.' Section (4) refers to the information that must be reported to the Department under Section (5), but refers to that document as a survey." (Decision at 5.)
This, DBR posits, renders the statute ambiguous. Id.
The Court first notes that the word "survey" is a commonly used term with a readily identifiable definition. According to Black's Law Dictionary "survey" can be used as a noun or a verb to mean "[a] general consideration of something; appraisal. . . . A poll or questionnaire. . . ." Black's Law Dictionary 1486 (8th ed. 2004). According to this definition, a survey is comprised of two distinct but dependent components. First, there must be an object — the "something" referenced in the definition. Second, there must be a consideration of that object.
The Legislature's use of the word "survey" in 27-29-4.4 is wholly consistent with this definition. The Legislature used a variation of the word "survey" on fourteen instances throughout 27-29-4.4. Of these fourteen instances, ten appeared in the noun form. Seven instances were explicitly as part of the phrase "auto body repair labor rate survey." Section § 27-29-4.4(a). This phrase is explicitly defined in the statute: "`Auto body labor rate survey' is an analysis of information gathered from auto body repair shops regarding the rates of labor that repair shops charge in a certain geographic area." Section § 27-29-4.4(a)(1)(i). The words of this statutory definition are plain, clear, and *Page 11 
unambiguous; therefore, no interpretation by DBR or this Court is allowable. Krupa, 557 A.2d at 869. The Court understands the phrase "auto body labor rate survey" to mean exactly what the Legislature said it is to mean — "an analysis of information gathered from auto body repair shops regarding the rates of labor that repair shops charge in a certain geographic area." Section § 27-29-4.4(a)(1)(i).
Four instances in which the noun form of the word "survey" appears in the statute are of only the most trivial of distinctions. One instance of the word "survey" involved the plural form of the explicitly defined phrase, "auto body repair labor rate surveys." Section § 27-29-4.4(a)(6) (emphasis added). This phrase can mean nothing other than two or more instances of the definition expressed by the Legislature in § 27-29-4.4(a)(1)(i). Likewise, in one instance the word "surveys" is used without any modifiers. Section § 27-29-4.4(a)(7). Read in the context of preceding provisions of the statute, this use of the word "surveys" refers to the auto body labor rate surveys submitted to DBR by insurers as required by the statute. Section § 27-29-4.4(a)(6)-(7). The final noun forms consist of the phrase "labor survey" and "labor rate survey." Section § 27-29-4.4(a)(4)(i), (6)(i). The exclusion of "rate" as a modifier of the word "survey" or the words "auto body" as modifiers of the word "labor" is of no consequence. These statutory provisions must be read in the context of the entire statute. Nothing in the text of the statute suggests that the Legislature contemplated any type of labor rate other than the labor rate for auto body repair work. Accordingly, the phrase "labor rate survey" as used in § 27-29-4.4(a)(6)(i) must be construed identically as "auto body labor rate survey." *Page 12 
Of the thirteen instances in which a form of the word "survey" appears in the statute, only three instances use the word as a part of speech other than a noun. On these instances, the Legislature used the word "surveyed." Section § 27-29-4.4(a)(4)(i)-(ii), (6)(iii). In this form, "survey" appears as a verb in the past tense. Though "surveyed" is not explicitly defined in the statute, its use is entirely consistent with the plain, literal meaning of this verb as a "general consideration" or "appraisal." Black's Law Dictionary at 1486.
For these reasons, the Court disagrees with DBR's contention that the word "survey" is used ambiguously. On the contrary, considered in their appropriate statutory context, the words "survey," "surveys," and "surveyed" each have an ordinary, literal meaning which it is not this Court's prerogative to ignore or alter. Cocchini, 479 A.2d at 111.
 Conclusion
The Court concludes that § 27-29-4.4 is not ambiguous. Thus, "there is no room for statutory construction or extension, and we must give the words of the statute their plain and obvious meaning." C J Jewelry Co.v. Dep't of Employment Training Bd. of Review, 702 A.2d 384, 385 (R.I. 1997). DBR's interpretation of the statute is therefore inapposite.
Accordingly, the Court further concludes that DBR's Decision was affected by error of law. As such, ABARI's rights were substantially prejudiced. The Decision issued by DBR is reversed. The Court determines that § 27-29-4.4 applies to every insurance carrier authorized to sell motor vehicle liability insurance in Rhode Island. In addition, the Court determines that every insurer governed by § 27-29-4.4 must conduct *Page 13 
a labor rate survey as provided in the statute and use that survey as the sole determinant of the prevailing auto body labor rate.
Counsel shall submit an appropriate order for entry.
[1] Since the arguments presented by PCIAA in its supporting memorandum are in substance identical to the arguments made by DBR in its Decision and supporting memorandum, the Court limits its discussion to the claims made by DBR. *Page 1