In the Matter of the Application of GEORGE H. EBERLE, Petitioner, for an Order against FIORELLO H. LAGUARDIA, as Mayor, and Others, Constituting the Board of Estimate of the City of New York, as Trustees of the New York City Employees' Retirement System, and THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Respondents.*

Supreme Court, Special Term, New York County, May 14, 1940.

*Moses Altman*, for the petitioner.

*William C. Chanler, Corporation Counsel,* for the respondents.

SCHMUCK, J. This petition is brought by the former chief clerk of the municipal civil service commission to compel the board of estimate, as head of the New York City Employees' Retirement System, to pay him his service allowance under the law.

*Affd., 260 App. Div. 856.

The petitioner entered the service in 1896, and when he filed his application he had forty-three years of experience and had reached the age of sixty-one. Under section B3–36.0 of the Administrative Code of the City of New York provision is made as follows:

" Retirement of a member for service shall be made by the Board as follows:

" 1. Any member in city-service may retire upon written application to the Board, setting forth at what time, not less than thirty days subsequent to the execution and filing thereof, he desires to be retired, provided that such member at the time so specified for his retirement, shall have attained the minimum age of retirement provided for the group of which he shall be a member at such time."

Under the provisions as to minimum age and length of service he was entitled to be retired at his own request, and to set a period at which such retirement should take effect, provided the time so specified was not less than thirty days. His application was made on April 17, 1939. About two weeks prior thereto charges had been made against him, which on their face did not seem to be very serious except for one, that there was a shortage in his accounts. The notice of the charges was accompanied by a letter suspending him from service and notifying him that if they were sustained he would be dismissed from service. On April 15, 1939, this charge was followed by specification of the net shortage in his accounts of $1,300.48. On April 17, 1939, which was the same date as his application for retirement, he notified the president of the civil service commission that he had deposited the amount of the alleged shortage of $1,300.48 in the bank, and requested a postponement of the hearing for two weeks, owing to his indisposition. On April nineteenth he replied to the specification of the charges, and the next day was dismissed from the service.

At the time of his application the petitioner was still in the city service, although under suspension. According to the rules of the board of estimate adopted in accordance with subdivision (1) of section 1704 of chapter XXVI of the Greater New York Charter, the board of estimate adopted the following rule and regulation, which is still in force:

" Rule 58. The rights of an applicant to retirement shall not be forfeited by separation from service or other change in status subsequent to the filing of an application for retirement, but he shall not be credited with any time subsequent to his separation from service."

While formally dismissed from service on April 20, 1939, his application having been filed prior to that date nevertheless came up for consideration before the board of estimate. Finally, after

repeated adjournments and on December 14, 1939, the board of estimate voted, eleven to three, to retire petitioner, to take effect May 17, 1939, as requested by him. Three days later the mayor announced his disapproval of the resolution and demanded that it be reconsidered. The board of estimate accordingly rescinded its resolution and on January 11, 1940, as trustees of the New York City Employees' Retirement System, it refused to grant him service retirement.

There is virtually no dispute as to the facts in the case. Respondents contend that rule 58, which permits the retirement of an applicant, even though he has already separated from service, provided his application has been made prior to such separation, does not apply to one who is under charges for delinquency, and who has in the interim been removed on account of such delinquency.

In principle the board of estimate is in no different position from the teachers' retirement board in relation to the corresponding pension system applicable to the public schools. They are trustees of the retirement system in charge of investing funds, and act largely in an administrative capacity. It has been repeatedly held, in connection with the interpretation of the law applicable to the teachers' retirement system, that the provision as to retirement for service is self-executing. The board has no discretion in such cases. (*Rees* v. *Teachers' Retirement Board*, 247 N. Y. 372; *Matter of Creveling* v. *Teachers' Retirement Board*, 255 id. 364.) The two systems are so closely parallel in their provisions that they must be interpreted by the same analogies. The reason is that they both represent systems built up on actuarial principles and in large part out of accumulations from contributions or deductions from the salaries of the respective employees. The retirement allowance is not a reward of merit, but a right which can be forfeited only under extreme circumstances. No justification for the refusal to grant service retirement based upon analogies taken from older cases involving policemen, firemen, members of the health department, etc., can be of interest, as they are all cases involving a different type of law and decided in greater part before the set-up of the present New York City Employees' Retirement System and the other ones on an actuarial basis. Reference here is to the type of decisions in *People ex rel. Brady* v. *Martin* (145 N. Y. 253); *People ex rel. Hardy* v. *Green* (37 App. Div. 589); *Matter of McMeekan* v. *Dept. of Health* (157 Misc. 620). There an element of discretion was construed to vest in the retirement board or commissioner, under the particularly applicable statute.

It is to be remembered that when charges are made against a policeman, fireman or school teacher, his right to a formal trial and

to a review of the evidence by appellate authority — the Appellate Division in the case of policemen and the State Commissioner of Education in the case of teachers — is a safe protection against abuse of authority or against improper removals.

Most other types of civil service employees, like the petitioner, have no such protection. Under section 22 of the Civil Service Law they are entitled merely to service upon them of charges and the opportunity to reply. No right to appeal exists.

Respondents present what is intended to be a record of a hearing presenting a brief colloquy between petitioner and the commissioner. Even though under oath, to call it a trial would be a travesty. True, an employee of this character is not entitled to a formal trial like a policeman, fireman or teacher. That fact alone, however, should entitle him to consideration greater than a civil servant of the other type, who, while under charges, expects to escape the penalty of dismissal by filing an application for retirement. Certainly as a disciplinary matter, a policeman or a fireman should not be retired until serious charges against him are cleared up. No serious charges warranting the extreme penalty exist in the case under consideration. In fact, prior to or at the time of his application for retirement the petitioner made the claimed shortage good. There is no evidence that such shortage was a deliberate embezzlement by the chief clerk. It may have been the result of carelessness. In making what might be called restitution, he distinctly referred to the claim as only an alleged shortage.

It may be interesting to make reference here to *Matter of Hayward* (55 State Dept. Rep. 510). There the board of education had actually dismissed the school principal accused. His trial presented a full legal record with stenographic minutes. His case had been appealed to the Commissioner of Education, who occupies the same position relative to appellate jurisdiction as the Appellate Division relative to trials of policemen and firemen. His decision was that the charges of guilty were all sustained by the evidence. Nevertheless, he added: " In view of his prior unimpeached record and in view of the fact that the penalty established by the board of education forfeits his retirement rights, I am of the opinion that such penalty is too severe " (referring to the penalty of dismissal). He, therefore, ordered that the case be remanded to the board of education for adjustment of the penalty of dismissal, by according the accused the privilege of retiring, if he desired to take advantage of it. So that, even in a case where the guilt of the accused was beyond question, the reviewing authority nevertheless decided that the person charged with delinquencies should not be deprived of his pension. It is significant, too, in the last-mentioned case

that no application for service retirement had been made. He was already out of the school system. It was, therefore, necessary to remand the matter to the board of education, so that he could be given leave to retire, while his suspension nominally kept him a member of the retirement system.

It is further to be considered that the resolution of the board of estimate cannot be considered a legislative act requiring the signature of the mayor. The board of estimate had retired petitioner upon his own demand, as was his right, and upon apparent knowledge of all the circumstances in the case, including his having made restitution of the alleged shortage. Probably some such considerations as swayed Commissioner Graves in the *Hayward* case influenced the board of estimate in passing the first resolution. It was a violation of petitioner's rights to rescind the resolution and to deny him his retirement. There was no discretion in the board of estimate. Even if there were, in view of the peculiar circumstances of the alleged charges, weighing a prior unimpeachable record, it was an abuse of discretion, under the facts submitted.

In conclusion, the court does not desire to be misunderstood in refusing to consider the alleged delinquency of the petitioner as a bar to his retirement. Charges of inefficiency, misconduct and disobedience of orders, when directed against a person of long service of prior unimpeachable record, are not to be regarded in the same category as similar charges directed against a younger man. The sudden difficulties of the older man, unless an expression of moral turpitude, may be mere indications of the fact that the offender has outlived his usefulness, has become superannuated, and should be retired for the good of the service. The retirement system was not established as a reward of merit. In making provision for pensions for its members it gave them an incentive, on the one hand, to make a career of their service and, on the other, not to outwear their welcome when they were no longer fit. A head of department, with good conscience, might invite a superannuated, inefficient subordinate to apply for retirement, where he would hesitate to dismiss him, if no financial provision for old age existed. In this light the board of estimate, in its original resolution, correctly applied its rule 58 to petitioner's case. Its subsequent rescission of the resolution violated both the letter and the spirit of the law.

The motion to allow petitioner's retirement in accordance with the original resolution of the board of estimate is granted, effective as of May 17, 1939. Settle order.