273 A.2d 660.

MICHAEL MARRO *vs.* GENERAL TREASURER OF THE
CITY OF CRANSTON.

FEBRUARY 18, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. On July 18, 1963, the plaintiff, then a lieutenant in the City of Cranston permanent police department, was seriously injured in the line of duty as a result

of which he became and still remains unable to perform his regular duties. Notwithstanding his disability, he continued to receive his full salary for almost three years. His pay status changed when the Cranston city council, acting upon the recommendation of the mayor, voted that effective April 1, 1966, he be retired from active service in the department and placed on the pension list. The authority relied upon for that action was section 24-24 of the Cranston code,[1] the enabling legislation for which was P. L. 1937, chapter 2549.[2]

Thereafter plaintiff brought this civil action in the Superior Court. He seeks a writ of mandamus to compel the Cranston City Treasurer to pay him the difference between the pension he has been receiving since his involuntary retirement and the salary to which he would have been entitled if his status as a lieutenant in the permanent police department had not been terminated.[3] His position

---

[1]Section 24-24 provides in pertinent portion,

"Whenever an officer * * * of the permanent police department * * * shall become unfit to perform active duty by reason of physical infirmity * * * such officer * * * upon the recommendation in writing of the mayor, may in the discretion of the city council by a majority vote of the city council, be retired from active service and placed on the pension list, and when so retired he shall be paid annually from the police pension fund in equal monthly payments * * * a sum equal to one-half of his annual salary as defined in subsection (c) of section 24-23."

[2]The relevant portion of chap. 2549, sec. 1, reads:

"The mayor, with the advice and consent of the city council of the city of Cranston, is hereby authorized and empowered to create and establish a police pension list. Upon confirmation by said city council, the mayor may place upon said pension list officers and members of the regular paid police department of the said city who, by reason of age, physical infirmity, or other causes, may be unfit to perform active police duty."

[3]The plaintiff's intervening purported appeal to the personnel board, while resulting in a decision favorable to him, is in no way relied upon by him as a basis for this proceeding.

is that the vote retiring and pensioning him was invalid and a nullity because under the Cranston Home Rule Charter[4] all of the powers and duties relating to police department pensions were transferred from the mayor and the city council to the employee retirement board, that the employee retirement board has never acted on his case and indeed does not even exist, and that until legally retired and pensioned pursuant to the charter provision he is entitled to receive his full salary. The case was heard by a justice of the Superior Court on an agreed statement of facts. It was decided adversely to the plaintiff who now appeals from a judgment dismissing the action on its merits.

The basic question is whether by a provision of a charter adopted pursuant to article XXVIII of amendments to the state constitution, the home rule amendment, the people of Cranston could transfer to an employee retirement board the powers and duties with respect to the retirement and pensioning of police officers then vested in the mayor and city council under a prior legislative grant of authority (P. L. 1937, chap. 2549, *supra*, n.2).

Unless the home rule amendment conferred that right, the answer to that question would be "No" because historically under our system a municipal corporation, in the

---

[4]Section 14.13 of the Cranston Home Rule Charter provides, where pertinent, that

"The employee retirement board shall be responsible for the administration of all pension and retirement plans hertofore or hereafter established by ordinance and shall succeed to all the powers and duties relating to the administration of the police pension fund and the firemen's pension fund hitherto vested in the mayor, the council and committees of the council. * * * No employee of the city or any dependent or survivor thereof shall be placed on a retirement or pension list or be entitled to any benefit, allowance or pension under any retirement or pension plan except upon certification of the employee retirement board that all requirements of the ordinances involved have been fulfilled."

absence of a special constitutional provision, was a creature of the state having no inherent right of self-government and deriving all of its authorities and powers from its creator. *City of Providence* v. *Moulton,* 52 R. I. 236, 160 A. 75; *Opinion of Justices in re Metropolitan Park Loan,* 34 R. I. 191, 83 A. 3.

Municipalities by adopting home rule charters may, however, escape some of the strictures on self-government imposed by the historical relationship between the state and its cities and towns, but only in a narrowly limited sense. *Opinion to the House of Representatives,* 79 R. I. 277, 87 A.2d 693. Thus, they may govern themselves with respect to local affairs and may enact or amend such laws relating to their property, affairs and government as are not inconsistent with either the state constitution or the laws enacted by the General Assembly in conformity with its reserved powers. *Newport Amusement Co.* v. *Maher,* 92 R. I. 51, 166 A.2d 216. They may not, however, legislate on matters of state-wide concern for there the power of the General Assembly remains exclusive and undiminished. *State* v. *Krzak,* 97 R. I. 156, 196 A.2d 417. And even as to those local affairs where they may govern without prior state authorization, their power of home rule is subordinate to the General Assembly's overriding right to legislate on the same subject matter either (1) by a general act applicable to all cities and towns alike, and not affecting the form of government of any city or town; or (2) by a special act directed to a particular city or town and approved by a majority of its qualified electors. *Opinion to the House of Representatives, supra.*

The question narrows then, to whether providing a municipally appointed police officer with a disability pension is a matter for state or local action. The home rule amendment makes the character and the scope of that action the ultimate determinant, but it does not assist by fur-

nishing any guidelines. Instead it leaves to the courts the responsibility of resolving the conflicts where the state and a municipality have each legislated on the same subject matter.[5]

In this case both a state statute and a provision of the Cranston charter purport to regulate the right of a disabled police officer to receive a pension. In resolving the conflict between the two we cannot ignore a long line of decisions which tell us that it is the state's duty to preserve the public peace and good order, to enforce the laws, to suppress crime and to protect liberty and property; that the police officers who discharge the state's responsibility in these respects, even though they may have been appointed by municipalities under a delegation of power, act for all of the inhabitants of the state and not merely for those of a particular community; that they are officers who perform a state duty and are subject to full control by the state; and that as a necessary incident of that full control the state may regulate the appointment and tenure of the members of a local police department, and may also provide for the payment of their expenses and salaries out of local funds. *State* v. *Wax,* 83 R. I. 319, 116 A.2d 468; *Eaton* v. *Town Council,* 52 R. I. 449, 161 A. 225; *City of Providence* v. *Moulton, supra; Horton* v. *City of Newport,* 27 R. I. 283, 61 A. 759; *Opinion to the Governor,* 22 R. I. 654, 49 A. 36; *City of Newport* v. *Horton,* 22 R. I. 196, 47 A. 312; *Kelley* v. *Cook,* 21 R. I. 29, 41 A. 571.

It would appear on general principle that the broad sweep of the control which under our cases the General

---

[5]In the past we have decided that the regulation of elections, *Opinion to the House of Representatives,* 80 R. I. 288, 96 A.2d 627; education, *Royal* v. *Barry,* 91 R. I. 24, 160 A.2d 572; licensing, *State* v. *Krzak, supra; Newport Amusement Co.* v. *Maher, supra;* and the conduct of business. *Nugent* v. *City of East Providence,* 103 R. I. 518, 238 A.2d 758, were matters with respect to which the state had not surrendered its sovereignty to a home rule municipality.

Assembly has over police affairs certainly includes within its scope the right to provide for the pensioning of a police officer who becomes incapacitated by reason of an injury sustained in the line of discharging his duties as a state officer. It is upon this rationale that other courts have held that constitutional provisions such as ours do not permit a home rule municipality to impinge upon the state's sovereign power to control police affairs which include the right to provide for and regulate pensions. *Luhrs* v. *City of Phoenix,* 52 Ariz. 438, 83 P.2d 283; *Axberg* v. *City of Lincoln,* 141 Neb. 55, 2 N. W. 2d 613.

We are not persuaded by the statement in 40 Am.Jur. *Pensions* §19, 976 at 977 and 105 A.L.R. 259 at 263, relied upon by plaintiff, that the general rule is that the pensioning of a member of a police department of a municipality operating under a home rule charter is within the exclusive rule of that municipality. The only authorities relied upon in those works for the verification of that statement are one Oregon and four California cases.[6] Those cases, however, are clearly distinguishable because article XI, sec. 8½ of the California constitution permits a home rule municipality to exercise full plenary authority over its police officers; and the cited Oregon case notes that "* * * no other state has constitutional provisions similar to ours as to the powers of cities and towns." *Branch* v. *Albee,* 71 Ore. 188, 200, 142 P. 598, 601.

We decide this case under our own constitutional provisions, in accordance with our own long-settled principles and in partial reliance upon decisions of other courts where, unlike the situation in California and in Oregon,

---

[6] *Branch* v. *Albee* (1914) 71 Ore. 188, 142 P. 598; *Burke* v. *Police Relief and Pension Fund,* (1906) 4 Cal. App. 235, 87 P. 421; *Cohrn* v. *Henderson,* (1912) 19 Cal. App. 89, 124 P. 1037; *Klench* v. *Pension Fund Comm'rs,* (1926) 79 Cal. App. 171, 249 P. 46; *Richards* v. *Wheeler,* (1935) 10 Cal. App.2d 108, 51 P.2d 436.

198

the home rule constitutional provisions are similar to our own.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Francis Castrovillari,* for plaintiff.

*Peter Palombo, Jr.,* City Solicitor, for defendant.