[No. B048211. Second Dist., Div. Five. May 10, 1991.]

RONALD WILLIAMS, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

James K. Hahn, City Attorney, Frederick N. Merkin, Assistant City Attorney, and S. David Hotchkiss, Deputy City Attorney, for Defendants and Appellants.

Laurence B. Labovitz for Plaintiff and Respondent.

OPINION

ASHBY, Acting P. J.—The City of Los Angeles (City) and its chief of police appeal from a judgment granting a peremptory writ of mandate compelling them to reinstate respondent Ronald Williams to his former position as a lieutenant in the Los Angeles Police Department.

Respondent was dismissed from his position for misconduct. He filed a previous petition for writ of mandate to be reinstated to his position, primarily on the ground that the findings of misconduct did not support the penalty of dismissal. That litigation, which lasted approximately two years, was ultimately resolved in respondent's favor. Pursuant to a previous writ of mandate, the police board of rights reconsidered the penalty and recommended a 30-day suspension.

However, at the time he filed his original petition for writ of mandate challenging his dismissal, respondent also applied for and was granted his 20-year service retirement pension at the rank of lieutenant. Throughout the litigation concerning his dismissal he was receiving his monthly pension check.

Under section 190.111 of the Los Angeles City Charter, a member of the police pension system who has retired at a rank higher than sergeant cannot return to active duty. Citing the charter, the City refused to reinstate respondent despite the reduction of the original dismissal to a suspension.

Respondent filed the instant amended petition for writ of mandate seeking to be reinstated notwithstanding his retirement. The trial court found that respondent made a mistake in retiring on the erroneous assumption that if he ultimately prevailed in his lawsuit, he could return to work. The court held respondent could rescind his retirement on the ground of mistake; the court ordered that respondent be reinstated, subject to reducing his award for backpay by the amounts respondent received for his retirement. This is the judgment from which the City now appeals.

We reverse. Respondent elected to take his retirement pension, effectively converting his property right of continued employment into a property

right to a pension. Respondent should have known this would preclude his return to active duty. Respondent's mistake was unilateral. The City did not induce respondent's mistake or take knowing advantage of it. The City's defense of respondent's lawsuit on the merits of the dismissal did not estop the City to enforce the charter provision.

## BACKGROUND

### *Charter*

Article XVIII, section 190.111 of the Los Angeles City Charter (further section references are to article XVII of this source, unless noted otherwise) governs the return of retired members to active duty. It permits the chief of police to accept an application of a retired member to be returned to active duty only if certain conditions are met. The first and controlling condition is stated in section 190.111 (A)(1): "A retired member, whenever retired, may file, with the Chief of the department from which he retired, a written application to be returned to active duty therein *only upon the conditions*: (a) that his original retirement had been pursuant to Section 190.11 [retirement for years of service] and had been . . . from the Police Department *while holding a rank no higher than Sergeant*; . . ." (Italics added.)

Respondent, having retired at the rank of lieutenant, does not qualify. This section precludes a retired lieutenant from returning to active duty. This section may be intended to reserve the limited number of high ranking positions in the department to persons who have not previously retired.

### *Respondent Retired*

 In the trial court and on appeal respondent suggested that he never really "retired"; he merely "withdrew" his "pension benefits." This claim is wholly contradicted by the record and apparently was not believed by the trial court.[1]

Respondent's formal application stated, "your petitioner prays that he be retired from active service in the Police Department, by reason of years of service and that he be paid a pension from the Fire and Police Pension Fund in accordance with the provisions of Article XVIII of the Charter of the City of Los Angeles." The department of pensions notified respondent that "[y]our application for a service pension was presented at a regular meeting

---

[1] "MR. LABOVITZ [respondent's counsel]: All right. Your Honor, the issue as we see it is whether his withdrawal of his legally vested pension benefits con—

"THE COURT: Well, that's not what he did, he didn't withdraw his legally vested pension benefit. He didn't just take out what he had contributed to this pension fund, did he? He took a lifetime pension of so many dollars a month."

of the Board of Pension Commissioners held December 10, 1987 and you were granted a pension pursuant to the provisions of Article XVIII of the City Charter, in the amount of $1,872.88 a month effective August 1, 1987."

Even respondent's own evidence failed to support his claimed distinction between retirement and withdrawal. Respondent's handwritten letter of November 5, 1987, to the board of pension commissioners states, "This is a request for the Board to institute my Pension Plan Payments . . . . I have served as a member of the Los Angeles Police for the twenty-year period required . . . ." His handwritten letter of November 17, 1987, requested a change in the effective date of his "pension." Respondent's own declaration showed that he understood the difference between a lifetime monthly pension and withdrawal of his contributions to the system.[2] Knowing that distinction, respondent chose to take his pension rather than to withdraw his contributions.

Respondent's claim that department of pensions records showed he never really retired is based on respondent's fallacious assumption that taking his monthly pension is not the equivalent of retiring. Correspondence from the department of pensions to respondent consistently referred to respondent's "pension." The fact that this correspondence did not also use the term "retirement" is insignificant. Respondent also referred to a document which appears to be a roster of pensions granted. Although a "Remarks" section of this document states "Terminated from P.D.," the document still shows that a pension was granted in the amount of $1,872.88.

On appeal respondent contends that section 190.16 of the charter recognizes a distinction between a system member who is eligible to "retire" and a *former* system member who is eligible to "be paid a pension." The claimed distinction in section 190.16, however, does not help respondent as to section 190.111, which precludes the return to active duty of a "retired member" who retired at a rank higher than sergeant. "Retired Member" is defined in section 190.02(i) to mean "a person who is a former System Member whose active status as a Department Member had been terminated and who is receiving a pension pursuant to this Article." Thus, respondent is a retired member for the purpose of section 190.111 regardless whether his pension was paid under the authority of section 190.16(3).

---

[2]Respondent declared, "That I was counseled at that time by Mrs. Mary F. Washington of the Department of Pensions, who indicated that since I was terminated and did not retire, I was entitled to withdraw all of the contributions to the Pension Board, but that if I did so than [*sic*] I would forego any future ability to draw a lifetime monthly allotment." (Italics omitted.)

Finally, respondent contended at oral argument in this court that he is "not seeking reemployment but reinstatement." This distinction also fails. Section 190.111 does not refer to reemployment but return to active duty. Respondent seeks return to active duty but does not meet the necessary conditions.

### *Respondent's Mistake was not Induced by City Officials*

Respondent claimed in his declaration that at the time he applied for pension benefits "I specifically discussed this situation with Deputy City Attorney Eudon Farrell [*sic*], a counsel to the Pension Board, who advised me that the standard request document was the only form available to trigger payment of vested pension benefits, and further specifically advised me that in the event I was successful in my Superior Court litigation, and reinstated, I would have to repay the Pension Board all monies received." (Italics omitted.)

The declaration of Eudon Ferrell showed that respondent's declaration omitted crucial portions of the conversation. Ferrell was a deputy city attorney responsible for advising the department of pensions. He was also himself a retired Los Angeles police officer who was well aware that charter section 190.111 prohibited the return of an individual retired at the rank of lieutenant. He declared, "I first met Ronald Williams while employed by the Los Angeles Police Department. I have known Ronald Williams for approximately 20 years. I have read the declaration of Ronald Williams dated January 9, 1990 and I am familiar with the contents thereof. Specifically, in paragraph 5, Ronald Williams states that he had a conversation with me on or about November 5, 1987. He states that I specifically advised him that in the event he was successful in his Superior Court litigation, and reinstated, he would have to repay the Pension Board all monies received. This is not correct. I did have conversation with Ronald Williams when we met by happenstance in my office building sometime in the fall of 1987. He told me that he was in trouble and that he was retiring from the Los Angeles Police Department. *I specifically reminded him of the provisions of Los Angeles City Charter § 190.111 which prohibited the reemployment of an individual by the Los Angeles Police Department if he retired at the rank of lieutenant or above. Mr. Williams told me that he had spoken to his attorney and that he was confident of ultimate success. I expressed I was somewhat skeptical because if a judge issued such an order, it would fly directly in the face of the clear prohibition set forth in the Los Angeles City Charter. I further stated that I did not know what the outcome would be. In any event, I stated that he could not have it both ways and he could not have a double payment of both salary and pension benefits.* Except for that brief and unplanned meeting in the fall of 1987, I cannot recall any further conversation that I have had with Ronald Williams. Sometime after my conversation

with Ronald Williams I did receive a telephone call from his attorney, Laurence Labovitz. Mr. Labovitz asked me to confirm in essence the allegation set forth in paragraph 5 of Ronald Williams' declaration. I denied to Mr. Labovitz that I had made such a statement and further advised him that Charter § 190.111 prohibits the reemployment of an individual at the Los Angeles Police Department if he or she retires at the rank of lieutenant or above." (Italics added.)

*Chronology of Raising the Retirement Issue in the Dismissal Litigation*

A factor in the trial court's ruling, discussed *post*, appears to have been a delay by the City before raising the issue of charter section 190.111 in the dismissal litigation. The following chronology is useful.[3]

| | |
|---|---|
| 10-19-87 | Respondent was removed from office, effective 7-30-87. |
| 11-5-87 | Respondent applied for service pension. |
| 1-16-87 | Respondent filed in superior court his petition for writ of mandate to restore him to employment. |
| 12-10-87 | Respondent's application for service pension was granted by the board of pension commissioners which arranged for respondent to begin receiving monthly pension checks. |
| 2-2-88 | The trial court issued its (first) writ of mandate ordering the police board of rights to reconsider the penalty. |
| 4-7-88 | Upon reconsideration, the board again recommended dismissal. |
| 5-18-88 | The trial court issued its (second) writ of mandate compelling the board to reconsider the penalty at less than dismissal. |
| 5-31-88 | Deputy City Attorney S. David Hotchkiss, who represented the City in the dismissal litigation, and who was considering whether to appeal the second writ of mandate, wrote a letter to respondent's counsel sug- |

---

[3] We take judicial notice of the file in a previous appeal of the dismissal case, *Williams* v. *City of Los Angeles* (Aug. 10, 1989) B035287 [nonpub. opn.]. (Evid. Code, §§ 452, subd. (d), 459.)

gesting a stipulated suspension in lieu of an appeal by the City. *In this letter attorney Hotchkiss raised for the first time* the argument that whatever the outcome of the dismissal litigation, respondent could not be reinstated, because he had retired.[4]

6-3-88 Respondent's counsel wrote a reply letter to Deputy City Attorney Hotchkiss claiming that section 190.111 was totally irrelevant and that respondent never retired or relinquished his claim to complete reinstatement.

6-14-88 The City filed notice of appeal from the second writ of mandate.

8-10-89 The Court of Appeal (this division) ruled in respondent's favor, affirming the second writ of mandate.

12-8-89 Pursuant to the writ of mandate the police board of rights reconsidered the penalty. The police department advocate and Deputy City Attorney Hotchkiss attempted to raise the issue that respondent could not be reinstated because he had retired, but the board sustained respondent's objection to such evidence on the ground the board's only proper function was to determine the proper penalty for misconduct. The board reduced the penalty to a 30-day suspension.

12-15-89 Respondent filed his amended petition for writ of mandate in the proceedings now under review, contending that his retirement was not a proper ground for refusing to reinstate him.

### Trial Court Ruling

At the hearing the trial court stated, "I'm going to grant the amended petition for writ of mandate. [Respondent Williams] applied for pension

---

[4] In his declaration submitted to the trial court on the current amended petition, attorney Hotchkiss stated that he did not know of respondent's retirement until after the trial court hearing on the second writ of mandate. "When I learned of the fact of Ronald Williams' retirement I was completely taken by surprise. In my 9 years of representing the Los Angeles Police Department in writ of mandate proceedings pursuant to Code of Civil Procedure § 1094.5, I have never before experienced a situation where an officer both retired from the Los Angeles Police Department and sought relief from the Superior Court in a mandamus

benefits in the belief that his receipt of those benefits would be without prejudice to his ability to continue to prosecute his pending claim for reinstatement. [The City] told him nothing to indicate that such belief was incorrect and continued thereafter to resist such reinstatement claim on its merits. [Respondent Williams] was laboring under a mistake and [the City] knew or should have known that such was the case. Therefore, we have a mistake on the part of one party . . . which the other party knew about or should have known about, and that gives [respondent Williams] the right in a *court of equity to rescind his application . . . for pension benefits.*"

## DISCUSSION

The trial court erred in holding that the City's continued defense on the merits of the dismissal suit bars the City from applying the charter provision. The defense of the dismissal litigation occurred after respondent had already retired. It is not relevant to the relationship of the parties at the time of the retirement application, which is the transaction the trial court rescinded on the ground of mistake.

Furthermore, the City as involuntary defendant and adverse party to respondent had the right to defend the dismissal and owed no duty toward respondent to advise him of the consequences of the litigation. The deputy city attorney representing the police department and chief of police in the dismissal litigation did not have actual knowledge of respondent's retirement, which was arranged between respondent and the board of pension commissioners or department of pensions. (Fn. 4, *ante*, p. 1634.) Even assuming, as the trial court apparently ruled, that one department should be held to the knowledge which another department has, the proper focus should be on the City's knowledge at the time of the retirement application, not the subsequent litigation.

The record shows that at the time of the retirement application respondent was represented by counsel. Respondent casually spoke to an acquaintance, Deputy City Attorney Eudon Ferrell, who represented the pension department. Far from inducing respondent's mistake or sitting idly by, Ferrell actually attempted to warn respondent that under the charter respondent could not subsequently be reinstated if he retired.

The trial court's ruling cannot be sustained on the assumption that the court resolved conflicts between the declarations of respondent and Ferrell. The declarations did not conflict, because respondent's declaration did not

proceeding. Undoubtedly, this is so because of the strict prohibition and/or limitations in the City Charter against reemployment set forth in Los Angeles City Charter § 190.111(A)(1)."

address or meet the crucial point. Respondent merely stated that Ferrell told him, "[*I*]*n the event* I was successful in my Superior Court litigation, and reinstated, I would have to repay the Pension Board all monies received." (Italics omitted.) Ferrell's declaration showed that such statement came *after* Ferrell specifically warned respondent that in his opinion the charter clearly prohibited reinstatement if respondent retired. Only after expressing such skepticism did Ferrell state that, "*In any event*, [respondent] could not have it both ways and he could not have a double payment of both salary and pension benefits." (Italics added.)

Thus, the trial court's remark that the City "told [respondent] nothing to indicate that such belief was incorrect and continued thereafter to resist such reinstatement claim on its merits" refers to the delay in raising the retirement point in the subsequent dismissal litigation. It does not refer to the City's conduct or knowledge at the moment of the retirement application. Otherwise, the court's statement is not supported by substantial evidence.

 The record thus shows that respondent's belief, while represented by counsel, that he could take his retirement pension but still be reinstated later, was a unilateral mistake. It was not induced or knowingly taken advantage of by City officials. Respondent did not establish that he was entitled to rescind his retirement application. (Civ. Code, § 1578, subd. 2; *Carr* v. *Sacramento C.P. Co.* (1917) 35 Cal.App. 439, 446 [170 P. 446]; *Bowman* v. *Payne* (1921) 55 Cal.App. 789, 796 [204 P. 416].)

Although respondent cannot be reinstated because he has retired, the resolution of the dismissal litigation had the beneficial effect of clearing respondent's employment record of the dismissal.

The judgment is reversed with directions to the trial court to deny the amended petition for writ of mandate. Costs on appeal are awarded to appellants.

Boren, J., and Grignon, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 1, 1991. Broussard, J., was of the opinion that the petition should be granted.